# UNITED STATES DISTRICT COURT

for the

District of Utah

FILED
2025 OCT 9 PM 4:31
CLERK
U.S. DISTRICT COURT

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

FLASH DRIVE LISTED AS BD-15 FORENSIC
DOWNLOAD OF BD-2 SAMSUNG CELL PHONE
BEARING IMEI 352215330384478

)
)
)
)
)
)

Case No. 4:25-mj-00099 PK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated herein by reference.

located in the _____ District of _____ Utah _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252A | Transportation/Receipt/Distribution/Possession of Child Pornography |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Christopher Burton*

*Applicant's signature*

AUSA Christopher Burton

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/9/2025

City and state: St. George, Utah

*Judge's signature*

United States Magistrate Judge Paul Kohler

*Printed name and title*

FELICE JOHN VITI, Acting United States Attorney (#7007)
CHRISTOPHER BURTON, Assistant United States Attorney (NV #12940)
Attorneys for the United States of America
Office of the United States Attorney
20 North Main Street, Suite 208
St. George, Utah 84770
Telephone: (435) 634-4270
Christopher.Burton4@usdoj.gov

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF FLASH DRIVE LISTED AS BD-21, FORENSIC DOWNLOAD OF BD-1 APPLE IPHONE BEARING IMEI 353249107958452 | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:25-mj-00092 PK |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF FLASH DRIVE LISTED AS BD-22, FORENSIC DOWNLOAD OF BD-7 APPLE IPHONE BEARING IMEI 353049090469800 | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:25-mj-00093 PK |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF FLASH DRIVE LISTED AS BD-18, FORENSIC DOWNLOAD | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:25-mj-00094 PK |

| | |
|---|---|
| OF BD-8 APPLE IPAD MINI BEARING SERIAL NUMBER F4KKHDMNF194 | |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF FLASH DRIVE LISTED AS BD-19, FORENSIC DOWNLOAD OF BD-11 APPLE IMAC BEARING SERIAL NUMBER 67E317ED | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:25-mj-00095 PK |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF FLASH DRIVE LISTED AS BD-20, FORENSIC DOWNLOAD OF BD-9 HP LAPTOP BEARING SERIAL NUMBER B48C3503 | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:25-mj-00096 PK |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF FLASH DRIVE LISTED AS BD-17, FORENSIC DOWNLOAD OF BD-3, IPAD PRO BEARING SERIAL NUMBER DLXR2LC5GMLL | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:25-mj-00097 PK |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF FLASH DRIVE LISTED AS BD-23 FORENSIC DOWNLOAD OF BD-13 CELERO CELLPHONE BEARING IMEI 862533054225450 | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:25-mj-00098 PK |

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF FLASH DRIVE LISTED AS BD-15 FORENSIC DOWNLOAD OF BD-2 SAMSUNG CELL PHONE BEARING IMEI 352215330384478 | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br><br>Case No. 4:25-mj-00099 PK |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Brandon Dunbar, Detective with the St George Police Department, being duly sworn, state:

### AFFIANT BACKGROUND AND QUALIFICATIONS

1.    I am a Detective with the St George Police Department and have been since September of 2010. My current assignment is working on Sex Crimes. I have been trained in forensic interviewing of children, and have attended several training pertaining to the investigation of sex offenses, as well as Child Sex Abuse Materials, also referred to as CSAM or child pornography. I've had the chance to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.

### PURPOSE OF AFFIDAVIT

2.    I submit this Affidavit in support of an application for a search warrant for further review of forensic downloads of the following devices seized from the residence of PATRICK DOYLE OLSON: 1) an Apple iPhone bearing IMEI 353249107958452; 2) an Apple iPhone bearing IMEI 353049090469800; 3) an Apple iPad Mini bearing serial number

F4KKHDMNF194; 4) an Apple iMac bearing serial number 67E317ED; 5) an HP laptop bearing serial number B48C3503; 6) an Apple iPad Pro bearing serial number DLXR2LC5GMLL; 7) a Celero cell phone bearing IMEI 862533054225450; and 8) a Samsung cell phone bearing IMEI 352215330384478 (the "Subject Devices"), being currently secured in the evidence room at St George Police Department's located in St. George, Utah.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts in this affidavit are included based on my training and experience, as well as my review of reports written by other law enforcement officers.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2252A(a)(5) (Possession of child pornography); 18 U.S.C. § 2252A(a)(1) (Transportation of child pornography); and 18 U.S.C. § 2252A(a)(2), (Distribution/Receipt of child pornography) have been committed by PATRICK DOYLE OLSON  (the "Target Offenses").  There is also probable cause to search the Subject Device described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of the Target Offenses as further described in Attachment B.

5.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts in this affidavit are included based on my training and experience, as well as my review of reports written by other law enforcement officers.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2252A(a)(5) (Possession of

child pornography); 18 U.S.C. § 2252A(a)(1) (Transportation of child pornography); and 18

U.S.C. § 2252A(a)(2), (Distribution/Receipt of child pornography) have been committed by

PATRICK DOYLE OLSON (the "Target Offenses").  There is also probable cause to search the

Subject Devices described in Attachment A for evidence, instrumentalities, contraband, and/or

fruits of the Target Offenses as further described in Attachment B.

## SEARCH METHODOLOGY TO BE EMPLOYED

7.    The search procedure of electronic data contained in computer hardware,

computer software, and/or memory storage devices may include the following techniques (the

following is a non-exclusive list, as other search procedures may be used):

a.    examination of all of the data contained in such computer hardware,

computer software, and/or memory storage devices to view the data and determine whether that

data falls within the items to be seized as set forth herein;

b.    searching for and attempting to recover any deleted, hidden, or encrypted

data to determine whether that data falls within the list of items to be seized as set forth herein

(any data that is encrypted and unreadable will not be returned unless law enforcement

personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit

of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of

the offenses specified above);

c.    surveying various file directories and the individual files they contain;

d.    opening files in order to determine their contents;

e.    using hash values to narrow the scope of what may be found. Hash values are used to find previously identified files of images of child pornography and do not capture images that are the result of new production, images embedded in an alternative file format, or images altered, for instance, by a single pixel. Thus, hash value results are under-inclusive, but are still a helpful tool;

f.    scanning storage areas;

g.    performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

h.    performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

## BACKGROUND REGARDING DIGITAL DEVICES

8.    Based upon my training, my experience, and my discussions with other law enforcement agents, I know the following:

a.    Users of digital devices increasingly choose to store items in digital form (e.g. pictures, documents) because digital data takes up less physical space, and can be easily organized and searched. Users also choose to store data in their digital devices, such as cell phones, because it is more convenient for them to access data in devices they own, rather than to later spend time searching for it. Keeping things in digital form can be safer because data can be easily copied and stored off site as a failsafe.

b.      Users also increasingly store things in digital form because storage continues to become less expensive. Today, 500 gigabyte (GB) hard drives are not uncommon in computers. As a rule of thumb, users with 1 gigabyte of storage space can store the equivalent of 500,000 double spaced pages of text. Thus, each computer can easily contain the equivalent of 250 million pages, that, if printed out, would fill three 35' x 35' x 10' rooms. Similarly, a 500 GB drive could contain 450 full run movies, or 450,000 songs, or two million images. With digital devices, users can store data for years at little or no cost.

c.      Storing data in digital form and not deleting it mirrors users' online habits where users have, for years, been encouraged to never delete their E mails. For example, on March 27, 2007, Yahoo! Mail announced free, "unlimited" capacity that gave their users "the freedom to never worry about deleting old messages again." See < http://ycorpblog.com/2007/03/27/yahoo mail goes to infinity and beyond/> (accessed April 18, 2012). Similarly, since June 2007, Google, Inc. has promoted free, increasingly larger storage "so you should never have to delete mail." <http://gmailblog.blogspot.com/#!/2007/06/welcome to official gmail blog.html>; see also <http://gmailblog.blogspot.com/2007/10/more gmail storage coming for all.html> (accessed April 18, 2012) (promoting its "Infinity+1" plan to constantly give subscribers more storage). Hotmail also has advertised free, "virtually unlimited space," noting that "Hotmail gives you all the space you need." See <http://www.microsoft.com/windows/windowslive/anotherlookathotmail/storage/> (accessed April 18, 2012).

d.      Digital devices can also store data automatically, without a user's input. For example, network logs may track an employee's actions for company auditing purposes or E mail headers may automatically list the servers which transmitted the E mail. Similarly, a web browser (i.e. an application such as Internet Explorer used to access web pages) can track a user's history of websites visited so users can more easily re access those sites. Browsers also often temporarily cache files from recently accessed web pages to improve the user's experience by reducing that page's loading time. These examples illustrate how the interaction between software and operating systems often results in data being stored without a user's knowledge. Even if a sophisticated user understands this automatic storage of data, attempts at deleting this data often fail because the data may be automatically stored multiple times and in different locations. Thus, digital evidence may exist despite attempts at deleting it.

e.      Digital data is particularly resilient to deletion. First, as noted, data is often automatically stored multiple times in multiple places, where even sophisticated users may not be able to locate. Second, digital data can be recovered years after it has been saved, or viewed B even after such data has been deleted. For example, when a user deletes a file on a computer, the file is sent to the recycle bin, where it can still be retrieved. Even if the file is deleted from the recycle bin, the data does not actually disappear; rather, it remains in "free space" or "slack space" (i.e. in unused space) until it is overwritten by new data. Third, an operating system may also keep deleted data in a "recovery" or "swap" file. Fourth, files from websites are automatically retained in a temporary cache, which are only overwritten as they are replaced with more recently viewed web pages. Thus, the ability to retrieve residues of an electronic file

from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer use habits.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

9.    Computers and computer technology have transformed the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls.

10.    The development of computers has changed this. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

11.    Child pornographers can now transfer photographs from a digital camera directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world.

12.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly

referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. Images can also be stored online or in the "cloud."

13.     The internet and its ubiquitous reach affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

14.     Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Service Providers such as Google, Yahoo!, and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

15.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, *i.e.*, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, *e.g.*, traces of the path of an electronic communication may be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Additionally, a forensic

examiner often can recover evidence suggesting whether a computer contains peer to peer software (P2P) (which is described in more detail in the following paragraphs), when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

16.    Based upon my experience and discussions with other law enforcement officers, your Affiant has learned that there are many types of preferential sex offenders. Some of these offenders have a primary sexual interest in children and are often referred to as pedophiles. This affidavit deals with these types of offenders. Preferential sex offenders receive sexual gratification from actual contact with children and/or from fantasy involving children, through the use of photographs and/or digital images that can be stored on computer hard drives and other types of digital recordable media (floppy diskettes, writable compact discs, writable DVDs, etc.). Your affiant is aware that these types of sex offenders often collect sexually explicit material consisting of photographs, video tapes, books, slides, and digital images, which they use for their own sexual gratification and fantasy and to show children in an attempt to lower the child's inhibitions.

17.    Your Affiant has learned that the internet has provided preferential sex offenders with a virtually anonymous venue in which they can meet other people with the same or similar sexual interests. Preferential sex offenders also use the computer to electronically exchange pictures of children or of adults engaged in sexual activity with children. These images are readily and easily available on the internet. These images can then be downloaded and stored on the computer or other forms of digital recordable media such as CDs, DVDs, USB thumb drives, floppy disks, etc., and then viewed on the computer monitor at any time. Preferential sex

offenders will also participate in chat rooms in order to communicate with other like-minded individuals and to meet children. This communication serves to legitimize their conduct and beliefs. Your affiant also knows from training and experience that preferential sex offenders who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage to their collections of child pornography. I also know that these individuals typically maintain their child pornography collections in the privacy and security of their homes, or other secure locations.

18.    Your Affiant also knows from training and experience that many involved in the sexual exploitation of children use mobile applications to facilitate the sexual exploitation of children. There are millions of applications or "apps" available for download to any user with access to the internet. Popular apps including Gmail, Instagram,  Facebook, Facebook Messenger, Whatsapp, Snapchat and others are commonly downloaded to a mobile device or smart phone (although apps can also be downloaded to other internet connected devices like a desktop computer or laptop computer).

19.    Many of these apps have a social media function which allows a user to create their own profile and communicate with other users. Depending on the application, the communication can occur as text messaging, voice messaging, and/or live stream video messaging. Apps also often allow for the sharing of files between users. These files can be images or videos and are often sent as attachments to a message. These files can then be stored online (for example in the message history or thread on an Internet Service Provider's servers) or downloaded to the individual's device(s).

20.    Individuals with a sexual interest in children can and often do use social media applications to communicate with other individuals with a sexual interest in children. Your affiant has worked several cases where individuals with a sexual interest in children have used social media applications to obtain, distribute, and manufacture child pornography. Your affiant also knows that individuals with a sexual interest in  children can, and often do, use social media applications to communicate with minors for the purpose of obtaining sexually explicit images of the children with whom they are communicating. These individuals often use multiple applications to communicate with victims and often create a profile where they pretend to be someone else. Your affiant has been involved in several investigations where an individual with a sexual interest in   children has used social media mobile applications to communicate with children for the purpose of obtaining sexually explicit images and videos of the child, or for the purpose of meeting the child in person to engage in illegal sexual conduct.

21.    Your Affiant knows from training and experience that persons trading in, receiving, transporting, distributing, or possessing images involving the sexual exploitation of children or those interested in the firsthand sexual exploitation of children often communicate with others through correspondence or other documents (whether digital or written) which could tend to identify the origin of the images as well as provide evidence of a person's interest in child pornography or child sexual exploitation.

## <u>DETAILS OF THE INVESTIGATION</u>

22.    On August 19, 2025, I applied for an arrest warrant for PATRICK DOYLE OLSON which was later approved.  The arrest warrant was sought in connection with OLSON's failure to register as a sex offender as required.  In 2013, OLSON was convicted of two counts

of felony attempt sexual assault on a minor under the age of 14. After conducting an investigation, law enforcement determined that OLSON was residing in Utah and had not registered as a sex offender as required by law. The arrest warrant was executed on August 21, 2025. After OLSON's arrest, I applied for a Utah state search warrant for OLSON's residence. The search warrant was later approved and served. The search warrant authorized, in part, the seizure and search of any electronic devices for evidence related to OLSON's failure to comply with sex offender registration laws in the state of Utah.

23.    A number of electronic devices were seized from OLSON's residence pursuant to the search warrant:

    a.    BD-1 Apple iPhone, gathered from OLSON during his arrest;

    b.    BD-2 Samsung cell phone, gathered from the kitchen counter;

    c.    BD-3 Apple iPad Pro, gathered from the kitchen counter;

    d.    BD-7 Apple iPhone, gathered from bedroom;

    e.    BD-8 Apple iPad Mini, gathered from bedroom;

    f.    BD-9 HP laptop computer, gathered from kitchen cabinet;

    g.    BD-11 Apple iMac computer, gathered from living room; and

    h.    BD-13 Celero cell phone, gathered from kitchen.

24.    The forensic downloads of evidence items were entered into evidence as follows;

    a.    BD-15 is the forensic download of BD-2, Samsung Cellphone;

    b.    BD-23 is the forensic download from BD-13, Celero Cellphone;

    c.    BD-17 is the forensic download of BD-3, iPad Pro;

    d.    BD-18 is the forensic download of BD-8, iPad Mini;

e.    BD-19 is the forensic download of BD-11, iMac Computer;

f.    BD-20 is the forensic download of BD-9, HP Laptop computer;

g.    BD-21 is the forensic download of BD-1 Apple iPhone; and

h.    BD-22 is the forensic download of BD-7 Apple iPhone.

25.    On September 29, 2025, I began reviewing BD-21, which was the forensic download of BD-1 the iPhone gathered from OLSON at the time of his arrest. Upon reviewing the forensic download, I came across the following images in plain view:

**File Name**: 5005.JPG
**File Description**:
An image of what appeared to be a small prepubescent female child with a white substance on her nude vagina. I was able to determine that this was a child due to a finger of an adult being in the frame of the image showing/referencing how small the child is. It is estimated that the female juvenile is between the ages of 2 and 4 years old.

**File Name**: telegram-peer-photo-size-4-5915634404867294189-0-0-0_partial
**File Description**:
An image of a prepubescent female child being sodomized anally by an adult male's penis. I estimated the age of the female to be between 2 and 4 years old.

**File Name**: telegram-peer-photo-size-4-5917820431551807448-0-0-0_partial
**File Description**:
An image of a prepubescent female child being sodomized anally by an adult male's penis. I estimated the age of the female to be between 2 and 4 years old.

**File Name**: telegram-peer-photo-size-4-5920077784758206516-0-0-0
**File Description**:
An image of an infant child being sodomized anally by an adult male's penis. The face of the child and the male is depicted in the image. This image appears to be a screenshot or clip from a video. The infant child appears to be between the ages of 8 and 18 months old.

**File Name**:  telegram-peer-photo-size-4-5922282627694445256-0-0-0_partial
**File Description**:
An image of a female juvenile performing oral sex on an adult male's penis.  This image appears to be a screenshot or clip from a video. It is estimated that the child is between the ages of 3 and 5 years old.

26.    When I saw these images in plain view, I immediately recognized them to be child pornography as defined under 18 U.S.C. § 2256(8) and, therefore, contraband. After observing these items, I stopped my review of the forensic download.  As noted, some of the file names indicate the image is associated with Telegram.  From my training and experience, I know Telegram to be a web-based messaging application that is often used for the possession, transportation, and trafficking of child pornography.  This messaging application can be accessed by a variety of internet-capable electronic devices, including cell phones using the iOS operating system, cell phones using the Droid operating system, and computers. This suggests that OLSON has used one or more of the Subject Devices to communicate with others online for the purpose of transporting, possessing, and trafficking child pornography files.

27.    Although the child pornography was found in plain view during a lawful search and was immediately recognized to be contraband, I am seeking the instant search warrant to broaden the scope of the search of OLSON's devices to include evidence of child pornography offenses out of an abundance of caution.

## CONCLUSION

28.    Based on the facts set forth in this affidavit, I respectfully submit that there is

probable cause to believe that the Subject Devices contain evidence of violations of Title 18

U.S.C. § 2252A(a)(5) (Possession of child pornography); 18 U.S.C. § 2252A(a)(1)

(Transportation of child pornography); and 18 U.S.C. § 2252A(a)(2) (Distribution/Receipt of

child pornography) and that the information sought herein will materially aid the investigation.


RESPECTFULLY SUBMITTED this ⊘th day of October, 2025.

Brandon Dunbar, Detective
St George Police Department


Subscribed and sworn to before me this __9th__ day of October, 2025.


JUDGE PAUL KOHLER
United States Magistrate Judge

**ATTACHMENT "A-1"**
**<u>Property to Be Searched</u>**

The Subject Device is described as a FLASH DRIVE LISTED AS BD-21, FORENSIC

DOWNLOAD OF BD-1 APPLE IPHONE BEARING IMEI 353249107958452, that is currently

secured at the evidence room located at the St George Police Department, located in St. George,

Utah.

**ATTACHMENT "A-2"**
**<u>Property to Be Searched</u>**

The Subject Device is described as a FLASH DRIVE LISTED AS BD-22, FORENSIC

DOWNLOAD OF BD-7 APPLE IPHONE BEARING IMEI 35304909046980, that is currently

secured at the evidence room located at the St George Police Department, located in St. George,

Utah.

**ATTACHMENT "A-3"**
**Property to Be Searched**

The Subject Device is described as a FLASH DRIVE LISTED AS BD-18, FORENSIC

DOWNLOAD OF BD-8 APPLE IPAD MINI BEARING SERIAL NUMBER

F4KKHDMNF194, that is currently secured at the evidence room located at the St. George

Police Department, located in St. George, Utah.

**ATTACHMENT "A-4"**
**<u>Property to Be Searched</u>**

The Subject Device is described as a FLASH DRIVE LISTED AS BD-19, FORENSIC

DOWNLOAD OF BD-11 APPLE IMAC BEARING SERIAL NUMBER 67E317ED, that is

currently secured at the evidence room located at the St. George Police Department, located in

St. George, Utah.

**ATTACHMENT "A-5"**
**<u>Property to Be Searched</u>**

The Subject Device is described as a FLASH DRIVE LISTED AS BD-20, FORENSIC

DOWNLOAD OF BD-9 HP LAPTOP BEARING SERIAL NUMBER B48C3503, that is

currently secured at the evidence room located at the St. George Police Department, located in

St. George, Utah.

**ATTACHMENT "A-6"**
**Property to Be Searched**

The Subject Device is described as a FLASH DRIVE LISTED AS BD-17, FORENSIC

DOWNLOAD OF BD-3, I-PAD PRO BEARING SERIAL NUMBER DLXR2LC5GMLL, that

is currently secured at the evidence room located at the St. George Police Department, located in

St. George, Utah.

**ATTACHMENT "A-7"**
**Property to Be Searched**

The Subject Device is described as a FLASH DRIVE LISTED AS BD-23 FORENSIC

DOWNLOAD OF BD-13 CELERO CELLPHONE BEARING IMEI 862533054225450, that is

currently secured at the evidence room located at the St. George Police Department, located in

St. George, Utah.

**ATTACHMENT "A-8"**
**<u>Property to Be Searched</u>**

The Subject Device is described as a FLASH DRIVE LISTED AS BD-15 FORENSIC

DOWNLOAD OF BD-2 SAMSUNG CELL PHONE BEARING IMEI 352215330384478, that

is currently secured at the evidence room located at the St. George Police Department, located in

St. George, Utah.

## ATTACHMENT B
## LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED

This affidavit is in support of application for a warrant to search the Subject Devices, which are more specifically identified in the body of the application and in Attachments A-1 through A-8, that can be used to store information and/or connect to the Internet, or which may contain mobile devices, for records and materials that are fruits, evidence, or instrumentalities of violations of 18 U.S.C. § 2252A(a)(5), 18 U.S.C. § 2252A(a)(1); and 18 U.S.C. § 2252A(a)(2) (the "Target Offenses"). These records and materials are more specifically identified as:

1.      Any and all material depicting child pornography, any sexual conduct regardless of whether it is between adult(s) and children, or between children, child erotica; any images, visual recording, digital imagery, sketches, drawings, or other media depicting or portraying lewd or lascivious exhibition of children's genitalia; sexually suggestive poses involving children; or any type of sexually explicit conduct involving children, as defined in Title 18, United States Code, Section 2256(8).

2.      Any and all audio recordings involving children engaging in sexual acts, whether alone, with another child or children, or with an adult or adults.

3.      Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs and electronic messages), pertaining to the Target Offenses or depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

4.    Any and all records and materials, in any format and media (including, but not limited to, e-mail, chat logs and electronic messages) identifying persons engaged in the Target Offenses.

5.    Records of communication (as might be found, for example, in digital data files) between individuals concerning the topic of child pornography, the existence of sites on the Internet that contain child pornography or who cater to those with an interest in child pornography, as well as evidence of membership, subscription or free membership, in online clubs, groups, services, or other Internet sites that provide or make accessible child pornography to its members and constituents.

6.    Evidence of any online storage, e-mail or other remote computer storage subscription to include unique software of such subscription, user logs or archived data that show connection to such service, and user login and passwords for such service.

7.    Any and all buddy lists, correspondence, or text messages in whatever media and format pertaining to Group E-Mails which relate to child exploitation or child pornography.

8.    Images and videos of children in non-sexually explicit poses or scenes, located in electronic, digital, or printed formats, which are necessary for comparison purposes of any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

9.    Any and all computer software, including programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs;

10.    Any computer-related documentation, which consists of written, recorded, printed or electronically stored material that explains or illustrates how to configure or use computer hardware, software or other related items;

11.    Records and information evidencing occupancy or ownership of the Subject Device described above, including, but not limited to, sales receipts, registration records, records of payment for Internet access, usernames, passwords, device names, and records of payment for access to newsgroups or other online subscription services;

12.    Stored electronic data and related digital storage relating to Global Positioning System ("GPS") data;

13.    Records evidencing the use of the Subject Device's capability to access the Internet, including: records of Internet Protocol addresses used and records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

14.    Images and videos, to include any metadata identifying the date and location of the Subject Device at the time of the photo or video pertaining to the Target Offenses;

15.    Evidence of who used, owned, or controlled the Subject Device at the time the things described in this warrant were possessed, accessed, received, created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

16.    Evidence of software that would allow others to control the Subject Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software; and evidence of the lack of such malicious software;

17.    Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Subject Device;

18.    Evidence of the times the Subject Device was used;

19.    Passwords, encryption keys, and other access devices that may be necessary to access the Subject Device.